476 A.2d 222

STATE of Maryland COMMISSION ON HUMAN RELATIONS

v.

WASHINGTON COUNTY COMMUNITY ACTION COUNCIL, INC.

No. 1519, Sept. Term, 1983.

Court of Special Appeals of Maryland.

June 11, 1984.

**452**

Risselle Rosenthal Fleisher, Baltimore, with whom was Philip L. Marcus, Baltimore, on the brief, for appellant.

Kenneth J. Mackley, Hagerstown, with whom were Mackley, Gilbert & Marks, Hagerstown, on the brief, for appellee.

Argued Before GILBERT, C.J., and BLOOM and BELL, JJ.

BELL, Judge.

The State of Maryland Commission on Human Relations appeals from the decision of a judge of the Circuit Court of Washington County which reversed the Commission's decision that Washington County Community Action Council, Inc. (Council) had failed to promote Sylvia Bell, because of her race.

The Commission makes the all too familiar allegation of error that the Circuit Court erred by substituting its assessment of the facts, and thus concluding that there was not adequate evidence in the record to support the holding of the agency charged with the initial responsibility of deciding the case, and in concluding that the agency's decision was arbitrary and capricious.

We agree; we reverse.

Sylvia Bell, a black woman, began her employment at the Child Development Center operated by the Council in January of 1968.

In October 1977, the position of Director of the Child Development Center was advertised. She applied for, but

did not receive the position. Allegedly the promotion was withheld because of her lack of experience in writing grant proposals, as well as the committee's information that she lacked the ability to work well with others.

Throughout its existence, the Center had employed three white persons as director, and no blacks. On November 21, 1977, Bell filed under oath a timely complaint with the Commission alleging that the Council had committed an act of employment discrimination against her because of her race.

The Commission filed a Statement of Charges. A public hearing was held before a hearing examiner of the Commission. An Opinion and Provisional Order was issued by the hearing examiner on June 4, 1981, which concluded that there had been a violation of the provisions of Article 49B, Annotated Code of Maryland, by the Council in its failure to promote Bell to the position as Director of its Child Development Center because of her race. The hearing examiner ordered, among other things, that Bell be offered the next available position comparable in salary and status to the position to which she had sought promotion, with back pay amounting to $6,862.32, plus interest.

The case was appealed by the Council to an appeal board of three Commissioners. After oral argument the appeal board affirmed the findings of fact made by the hearing examiner and dismissed the appeal.

The Council appealed that decision to the Circuit Court for Washington County which held "[t]hat the decision of the hearing examiner and appeal board was arbitrary and capricious and was unsupported by competent, material and substantial evidence in view of the entire record as submitted." The Commission noted its appeal to this Court.

The scope of the judicial review of a decision of an administrative agency is as set out in the Code of Maryland, Article 41, § 255(f):

The Court may affirm the decision of the Agency or remand the case for further proceedings; or it may

reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;  or

(2) In excess of the statutory authority or jurisdiction of the agency;  or

(3) Made upon unlawful procedure;  or

(4) Affected by other error of law;  or

(5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted;  or

(6) Arbitrary or capricious.

■ In applying the substantial evidence test a court may not substitute its judgment for that of the members of the administrative agency from which the appeal is taken. *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 512–13, 390 A.2d 1119 (1978).

■ A reviewing court examines the decision reached by the agency to determine whether reasoning minds could reasonably reach that conclusion by direct proof or by permissible inference from the facts and the record before the agency.  If that conclusion could be reached, then it is based upon substantial evidence and the court has no power to reject that conclusion. *Commissioner, Baltimore City Police Dept. v. Cason,* 34 Md.App. 487, 368 A.2d 1067, *cert. denied,* 280 Md. 728 (1977).  The administrative agency's decision must be reviewed in the light most favorable to the agency, since the decision is prima facie correct and carries with it the presumption of validity.  It is the province of the agency to resolve conflicting evidence; it is the province of the agency to determine the inferences to be drawn where inconsistent inferences can be drawn. *Bulluck, supra.*

The basic allocation of burdens and order of presentation of proof in cases of racial discrimination has been delineated by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973). Under *McDonnell* a three step pattern is established.

Step 1. The claimant has the burden of proving a prima facie case of discrimination.

To establish that prima facie case which is the first step, claimant must prove by a preponderance of the evidence that he or she

(a) applied for an available position;

(b) was qualified for that position; and

(c) was rejected under circumstances which give rise to an inference of unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Step 2. Once that prima facie case has been established the parties move to the next step. At this point, the burden shifts to the respondent "to articulate some legitimate, nondiscriminatory reason" for the rejection. *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824.

Step 3. At this step, the burden shifts back to the claimant to prove by a preponderance of the evidence that the legitimate, nondiscriminatory reason was not the actual reason, and merely a pretext for discrimination. "[The claimant] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine, supra* 450 U.S. at 256, 101 S.Ct. at 1095.

We turn now to the case at hand.

■ The trial court held that a prima facie case had been established and despite the argument to the contrary by appellee, we agree.

Bell belongs to a racial minority. The hearing examiner found that

> [t]he Complainant was obviously found [by the Council] to be qualified for the position for which she had applied, having been ranked as number 3 among the applicants

that survived the screening process to the point of being interviewed by the appointing panel.

Despite her qualifications Bell was rejected. After her rejection the position remained open and the employer continued to "seek applications from persons of her qualifications" and soon thereafter hired someone. On review the court found and appellant and appellee agreed that the Council articulated a legitimate, nondiscriminatory reason for its decision. The court next correctly concluded, "[t]he pivotal issue is whether the decision on step three [pretextuality] is supported by substantial evidence."

The court then moved on to make sixteen specific findings of fact. It summarized, in four other paragraphs, the facts upon which the Commission relied in reaching its conclusion which interestingly had been 28 in number. The Court then declared

It is equally clear from reading the record, the Opinion and Provisional Order, and the Order of the Appeal Board, that the hearing examiner did not judge the credibility of the witnesses or weigh the evidence presented.

It is apparent from the record that the four numbered paragraphs supporting the agency's decision, as summarized by the court, are precisely the "competent, material, and substantial evidence in view of the entire record as submitted" required to show that the reason proffered by the Council for rejecting Bell was a pretext and, therefore, discriminatory. It is equally patent that in reaching its enumerated findings of fact, the court judged the credibility of the witnesses upon whose testimony the court's findings of fact are based, without hearing that testimony or seeing the witnesses.

What is the substantial evidence which supports the decision of the hearing examiner and the Commission? The hearing examiner found among other things:

(1) Sylvia Bell, a black female, was employed in 1968 by the Child Development Center of the Council.

In the fall of 1969, she applied for the position of Assistant Director. She was not appointed to the position for which she applied. She was informed that, as the advertisement for the position stated, a bachelor's degree was required and she did not have that degree. The prior holder of the job did not have a degree.

(2) Since 1968 Council has employed only white directors and approximately seven black teachers and four white teachers.

(3) In late 1974, Council created a new position of Education and Training Coordinator. The job announcement for this position required a degree in Early Childhood Education or a related field.

She applied for the position of Education and Training Coordinator, was interviewed, but was not hired because she did not meet the minimum requirement of having a bachelor's degree.

(4) Bell acquired a degree in Early Childhood Education at Shepherd College in May of 1977. She obtained a teaching certificate on May 14, 1977.

(5) In October of 1977, the position of Director, County Child Development Program, was advertised in the Hagerstown Morning Herald. The advertisement did not set forth a bachelor's degree as a necessary requirement· for the position.

Bell read the advertisement for the position of Director, noted that a degree was not required, wrote a letter to the Equal Opportunity Officer at the Council, and expressed her concern that no degree was being required despite prior practice.

The Executive Director of Council informed Bell that a degree was never a mandatory requirement for any position either at the Childhood Development Center or the Community Action Council.

(6) Bell applied for the position of Director and was interviewed by a committee of seven individuals of whom the majority were white.

(7) A non-voting member of the selection committee for the position of Director communicated to the selection committee his concern as to Bell's ability to interact in a supervisory capacity with other staff members, noting concern about her attitude, and her conflicts with staff and parents because of her abrasive attitude. He had no knowledge of Bell's ability to read and interpret government regulations nor to appear before a County Board of Commissioners and represent the Council.

(8) Ms. Karsay had been involved with the Council for approximately eight and one half years as a member of the board, Secretary to the Board, and Vice-President and President of the Board. She testified that she had been informed that Bell did not get along well with the other people. She further stated that the board was informed that Bell has problems of attitude because of an abrasive nature in terms of relating to both parents and staff. Ms. Karsay added that two of the black women on the selection board had voiced their opposition to Bell and had voted against her. The selection board also discussed the fact that some individuals thought a majority of the staff would resign from their positions at the Council if Bell was appointed director.

(9) Ms. Karsay further stated that if, at the time the selection board was meeting, she had had the personnel evaluation of the complainant dated July of 1977 which reflected the following: dependability-excellent; judgment-excellent; willingness to accept new ideas-above average; willingness to improve work quality-excellent; cooperation with fellow employees-above average; relations with parents-excellent; relations with others-above average; ability to accept criticism-above average; attitude toward job-excellent; leadership ability-above average; effectiveness in job-excellent; professionalism-excellent, she would not have

accepted some of those evaluations because of her own knowledge of Bell.

(10) Bell was rated number three among the applicants interviewed by the panel; she was considered very good, but the panel felt that she did not have enough expertise in writing federal grants and this, with their perceptions of her as not getting along with people, resulted in her not being selected for the position.

(11) Bell's personnel evaluations for April, 1976, August, 1976 and July, 1977 rated appellant as being excellent in the majority of the categories, above average in the bulk of the remaining categories and infrequently average. On only one evaluation, August of 1976, was there a "need improvement" category checked-that was punctuality.

(12) Council had models that could have been of assistance in preparing applications for grants as well as staff on hand that could have assisted a new director in such endeavors.

(13) The State regulations for day care centers require that the director possess specific training and experience in early childhood education. The individual doing the planning and supervision in the specific day care center is the individual who is supposed to meet the state qualifications of training and experience of early childhood education. When Mr. Paul G. Pittman, Jr. was appointed director, his qualifications as to education and experience in early childhood education were checked.

(14) From the time of Pittman's appointment as Director to the time that Bell was appointed as the Education Coordinator, Council had no designated staff member who met the requirements of the State.

(15) Pittman had a degree in secondary education from Towson State University, was a substitute teacher with the Hagerstown Board of Education for two years, and was the Assistant Director of the CETA program in Washington County. He had experience in submitting proposals for federal grants; he was, however, not qualified under the

regulations of the Maryland State Department of Health and Mental Hygiene to be designated as Education Director, as he did not meet the necessary qualifications of training and experience in early childhood education.

(16) Bell, who was qualified under the State regulations as having possessed the necessary education and experience in early childhood education, was appointed as education coordinator in June of 1978.

(17) The Federal government, the primary source of funds for the Council, required that organization to design programs to create opportunities for the advancement of its employees. However, there was no evidence of the organization having any plan or program established to achieve this end.

Appellee refers us to a number of cases which it claims supports its position that appellant failed to meet her burden of proof as required in Step 3. We have reviewed these cases and find them inapposite.

On review, we find that virtually all the appellate cases cited by appellee appear to involve review by the Court of cases where it found there was substantial evidence to support the findings and conclusions of the court below. This is precisely the argument made by appellant. In the case *sub judice*, the scope of review was given mere lip service by the court.

Appellee does refer us to one appellate case which might be read to support its position. That is *Jackson v. City of Killeen*, 654 F.2d 1181 (5th Cir.1981), which held that the trial court erred in concluding that the articulated reasons for discharge were a mere pretext. The rationale behind the decision in that case, however, was of paramount importance in that the trial judge had read the *Burdine* case as casting on employers the burden of persuasion that the reason was nondiscriminatory.

■ The Commission is charged with the responsibility of investigating allegations of racial discrimination. Md.Code (1954, Repl.Vol.1979), Article 49B § 10(a). It has expertise

in handling such matters. Since substantial evidence in light of all the record was presented to sustain its findings, the Commission's decision should not have been set aside. Nor should the court have directed the hearing examiner, on remand, to "make findings of fact based upon the entire record in this case," including findings based on the testimony of witnesses whom the hearing examiner evidently did not believe. The hearing examiner concluded that appellant had proved by a preponderance of the evidence that the legitimate, non-discriminatory reason "was not the actual reason" but merely a pretext for discrimination. There was substantial evidence to support that conclusion.

The court erred in substituting its view of the facts for that of the responsible administrative agency. We remand the case with instructions to affirm the decision of the Commission.

JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE COMMISSION ON HUMAN RELATIONS.

COSTS TO BE PAID BY APPELLEE.