506 A.2d 263

**Richard J. PEPPIN**

v.

**WOODSIDE DELICATESSEN.**

**No. 527, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 2, 1986.

40

Joan S. Meier, Washington, D.C. (Wendy L. Kahn and Zwerdling, Leibig & Kahn, on brief), Bethesda, for appellant.

No brief or appearance by appellee's counsel.

Argued before WILNER, WEANT and GARRITY, JJ.

GARRITY, Judge.

The business promotion, which is the subject of this appeal, granted discounts on dinners served to a person wearing either a skirt or a gown. Against this superficially humorous backdrop, we must decide whether this seemingly innocuous business practice constitutes unlawful discrimination within the meaning of a county ordinance.

Our focus will be directed to the Montgomery County Code, Human Relations Law, § 27–9. That section provides:

It shall be unlawful for any owner, lessee, operator, manager, agent or employee of any place of public accommodation, resort or amusement within the county:

(a) To make any distinction with respect to any person based on race, color, sex, marital status, religious creed, ancestry, national origin, handicap, or sexual orientation in connection with admission to, service or sales in, or price, quality or use of any facility or service of any place of public accommodation, resort or amusement in the county.

We shall look at whether the evidence presented to the Human Relations Commission of Montgomery County was sufficient for it to determine that the practice had a discriminatory effect. We shall then examine whether the business promotion was allowable under the ordinance.

### *Facts*

This matter began when the Montgomery County Human Relations Commission (Commission) received a complaint filed by Mr. Richard J. Peppin claiming that the Woodside Delicatessen (Woodside) was engaging in a practice of discrimination. The foundation of Mr. Peppin's allegation was that his bill for dinner at Woodside reflected that only his lady companion had been credited with a 50% discount on the price of her meal. Upon inquiry, Mr. Peppin learned that on Thursday nights the restaurant provided this discount on dinners to female customers only.

In response to Mr. Peppin's complaint, the Commission advised the owner of Woodside, Mr. Gus Haris, that there were "reasonable grounds to believe" the practice of "Ladies' Night" at the restaurant was a sex-based price discount in violation of § 27–9 of the Montgomery County Ordinance. The Commission then invited Mr. Haris "to join in a collective effort towards a just conciliation of this matter." Mr. Haris thereupon abolished "Ladies' Night"

and immediately instituted "Skirt and Gown Night." That promotion entitled any Thursday night patron who wore either a skirt or gown to receive a 50% discount on the price of his or her meal.

Skirt and Gown Night at Woodside immediately became the focus of media attention.[1] Initially, 28 men appeared on the appointed evening. The premises, however, were graced by the presence of only 10 men wearing either skirts or gowns.[2] Six weeks later, however, none of the male patrons on Skirt and Gown Night wore either a skirt or a gown.

The Commission's Public Accommodation Panel (Panel) held a hearing to determine whether Ladies' Night or Skirt and Gown Night, or both, violated the Montgomery County Code. The Panel unanimously found that Ladies' Night was indeed a violation. In a split decision, the Panel determined that Skirt and Gown Night was also a violation and that it was "a discriminatory subterfuge, merely an extension of Ladies' Night." The Panel consequently ordered Mr. Haris to cease and desist that promotion at Woodside.

On appeal, the Circuit Court for Montgomery County (Cave, J.) affirmed the decision of the Panel as to Ladies' Night but reversed as to Skirt and Gown Night. The trial judge found the new discount policy to be facially neutral and non-discriminatory because Skirt and Gown Night did not "impact or burden men in any significant manner." The court based its holding on the fact that "men wear pants because they exercise a fashion preference to do so." This preference, the court noted, "is not an immutable

---

1. Reporters quickly seized upon this news opportunity and stimulated public interest with detailed accounts of the situation, including Haris's battle with the authorities and how he planned to "skirt the issue." Mr. Haris predicted that Woodside patrons would continue to be "mostly the same people, with the occasional man."

2. Four of the ten men wearing skirts were members of the "Redskins' Hogettes." It is customary for the Hogettes to appear in female attire designed to inspire certain players of the Washington Redskins football team commonly known as "Hogs."

characteristic of the male gender." Judge Cave determined that the Panel was clearly erroneous in its finding "that skirts are female attire and that men were thus unfairly burdened by being asked to wear them."

Mr. Peppin asks us to reverse that part of the lower court's decision concerning Skirt and Gown Night.

In addressing this court on appeal, Mr. Peppin explains his concern that we not look upon the preferential practice engaged in at Woodside as too trivial for our review. We believe the matter involves an intrinsically substantive issue which, left unanswered, could serve to encourage far more serious methods of discrimination.

*Sufficiency of Evidence to Determine Whether Business Promotion Was Discriminatory*

■ The scope of judicial review of the actions of administrative agencies is well settled in Maryland. When a circuit court reviews an agency decision, its task is restricted to determining "whether reasoning minds could reasonably reach that conclusion by direct proof or by permissible inference from the facts and the record before the agency." *State Commission on Human Relations v. Washington County Community Action Council, Inc.*, 59 Md.App. 451, 455, 476 A.2d 222 (1984). As a starting point, the agency's decision is considered to be prima facie correct and carries with it a presumption of validity. *Id.* Indeed, as this court has noted:

Whichever of the recognized tests the court uses—substantiality of the evidence on the record as a whole, clearly erroneous, fairly debatable or against the weight or preponderance of the evidence on the entire record—its appraisal or evaluation must be of the agency's fact-finding results and not an independent original estimate of or decision on the evidence. The required process is difficult to precisely articulate but it is plain that it requires restrained and disciplined judicial judgment so as not to

interfere with the agency's factual conclusions under any of the tests, all of which are similar....

*Commissioner, Baltimore City Police Department v. Cason,* 34 Md.App. 487, 499–500, 368 A.2d 1076 (1977), quoting from *Insurance Commissioner v. National Bureau,* 248 Md. 292, 309–10, 236 A.2d 282 (1967).

We are faced with two opposing views in the matter *sub judice.* The Commission, acting through the Panel, determined that Woodside's Skirt and Gown Night was a discriminatory practice because the business promotion operated to make a distinction in rates and price on the basis of sex. The circuit court, on the other hand, held that the promotion was facially neutral and did not have discriminatory impact because its volitional clothing requirement "did not burden men in any significant manner."

■ Our task remains clear. In reaching a determination, we must, as the circuit court should have done, afford deference to the findings of the administrative agency acting within its statutorily prescribed expertise. As the Court of Appeals noted in *O'Donnell v. Bassler,* 289 Md. 501, 509, 425 A.2d 1003 (1981), "[i]t is a fundamental principle of administrative law that a reviewing court should not substitute its judgment for the expertise of the administrative agency from which the appeal is taken."

As we stated in *Commissioner, Baltimore City Police Dept. v. Cason,* 34 Md.App. at 502–3, 368 A.2d 1076, quoting from *Public Service Commission of Maryland v. Baltimore Gas and Electric Company,* 273 Md. 357, 362, 329 A.2d 691 (1974):

We do not, therefore, in considering the legality and reasonableness of the Commission's decision in this case, afford prima facie correctness to the decree of the court below; nor do we determine merely whether the court abused its discretion in reviewing the Commission's order.... We do not directly review the reasonableness of the determinations made by the lower court, but instead consider whether there was substantial evidence before

the Commission on the record considered as a whole to support its conclusions.

Thus, in reviewing the conclusions of an agency in order to determine whether the record as a whole reflects substantial evidence of support, our mission is essentially that of repeating the task of the circuit court.

The evidence supporting the agency's determination consisted of testimony showing that the overwhelming majority of discount recipients to be female during the initial stage of the offering; that after several weeks when the novelty of the promotion faded, those patrons receiving discounts were all female; that men did not wear skirts and gowns in a restaurant catering to the general trade in Montgomery County; that skirts and gowns are widely recognized as apparel worn by women; that no such garb is found in a typical masculine wardrobe; and that to impose such requirement on men in order to receive a price discount for a meal would be unreasonable, inconvenient, and require additional expense. The Panel concluded that

> even though occasionally a man might decide to attend a future 'Skirt and Gown Night' wearing a skirt or gown either to harvest the discount or simply for amusement, it is likely that it would be almost exclusively females who would benefit from the promotion.

The circuit court, while acknowledging the findings of the Panel, did not accept the Panel's factual conclusion that discrimination flowed from the knowledge that men do not wear skirts and gowns as often as women. Instead, the circuit judge declared:

> Men wear pants because they exercise a fashion preference to do so. Some men wear robes, gowns, kilts, or other apparel. It is not within the purview of this court nor the panel to make a pronouncement on the appropriateness of fashion to gender; to do so unnecessarily promotes sexual stereotyping.

Although we believe the judge's findings to be contradicted by American cultural realities, we need not focus on the

circuit court's determination; our review is that of the agency's conclusion based upon facts presented at the hearing. The record is replete with evidence that Skirt and Gown Night was intended to—and did—have the same effect and serve the same function as Ladies' Night, *i.e.* it provided price discounts to women and, in fact, operated as a mere extension of Ladies' Night.

■ We hold that the evidence before the Panel was sufficient to support its decision that Woodside's practice of requiring persons to wear a skirt or gown in order to receive a half-price discount on food placed a significant burden upon men and, therefore, had a discriminatory effect. Although it is conceivable that some men may fantasize their appearance of frolicking about in a skirt or gown, those items normally remain in the closets—of their wives.

### Whether Business Promotion Allowable Under Ordinance

The remaining issue for us to review is whether the agency's Public Accommodations Panel erred in its conclusion that the particular business promotion sponsored by Woodside was a practice of discrimination proscribed by the ordinance.

■ In his brief, the appellant points to several United States Supreme Court and Federal Circuit decisions based on the Fourteenth Amendment of the United States Constitution, Title 7 of the Civil Rights Act of 1964, and other federal statutes. While these cases may be persuasive, they do not control here. Cases brought under those laws provide for a balancing test. *See Griggs v. Duke Power,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) and *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977) ("business necessity"); *cf., Koire v. Metro Car Wash,* 40 Cal.3d 24, 707 P.2d 195, 219 Cal.Rptr. 133 (1985) (holding that Ladies' Night was discriminatory and rejecting respondents' claims that the practice, in attracting female customers, was a business necessity or a promotion in harmony with public policy). The Maryland

Court of Appeals has held, however, that the Equal Rights Amendment of the Maryland Constitution prescribes an "absolute standard" and not a balancing test. Therefore, once discrimination is proved, a court cannot consider arguments attempting to "balance" the discriminatory practice against other concerns. *Rand v. Rand,* 280 Md. 508, 374 A.2d 900 (1977); *see Burning Tree Country Club v. Bainum,* 305 Md. 53, 501 A.2d 817 (1985); *Condore v. Prince George's County,* 289 Md. 516, 425 A.2d 1011 (1981); *Kline v. Ansell,* 287 Md. 585, 414 A.2d 929 (1980).

It is clear that the Montgomery County Council had the authority to enact such legislation. Its authority flows from the power delegated to it by the Maryland General Assembly. *See* Maryland Code Article 25A, § 5 et seq. The Maryland Court of Appeals has held this grant to be a broad one, encompassing more than those powers specifically enumerated in the statutory grant. Quoting with approval from *McQuillan,* Municipal Corporations (3rd ed.) § 24–44, it noted that "courts uniformly regard the clause as ample authority for a reasonable exercise in good faith, of broad and varied municipal activity to protect the health, morals, peace and good order of a community...." *Montgomery Citizens League v. Greenhalgh,* 253 Md. 151, 162, 252 A.2d 242 (1969); *cf., District of Columbia v. Thompson Company,* 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953).

■ As in all cases of statutory construction, we must discern and effectuate the actual intent of the legislative body that enacted the law. *Montgomery County v. Fulks,* 65 Md.App. 227, 500 A.2d 302 (1985); *Howard County Ass'n for Retarded Citizens v. Walls,* 288 Md. 526, 418 A.2d 1210 (1980). That intent is normally to be sought from the language of the provision itself. *Pineland Co. v. Miles,* 228 Md. 584, 180 A.2d 870 (1962). If that language "is plain and free of ambiguity and has a definite and sensible meaning, such is conclusively presumed to be the meaning of the legislature in enacting the statute." *State v. Preissman,* 22 Md.App. 454, 459, 323 A.2d 637 *cert. denied,* 272 Md. 747 (1974).

The pertinent language of the ordinance prohibits an owner or operator of any place of public accommodation within Montgomery County "to make *any distinction* with respect to any person based on race, color, *sex* ... in connection with admission to, service, or sales in, or *price*, ... of any facility or service of *any place of public accommodation* ..." (Emphasis added).

■ We believe the ordinance is unambiguous. Thus, while allowed to do so under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, we are not allowed under the Montgomery County Ordinance or the Maryland Constitution to engage in a balancing test. We hold, therefore, that the Montgomery County Human Relations Commission, based upon the findings by the Panel on Public Accommodations, properly concluded that Skirt and Gown Night amounted to unlawful sex-based discrimination within the meaning of § 27–9 of the Montgomery County Human Relations Act.

JUDGMENT REVERSED.

CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR THE ENTRY OF JUDGMENT IN CONFORMITY WITH THIS OPINION. APPELLEE TO PAY COSTS.