521 A.2d 1263

## MARYLAND SHIPBUILDING & DRYDOCK COMPANY, INC.

v.

## MARYLAND COMMISSION ON HUMAN RELATIONS.

No. 835, Sept. Term, 1986.

Court of Special Appeals of Maryland.

March 9, 1987.

Gil A. Abramson (Elaine Patrick and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellant.

Denise N. Slavin, Asst. Gen. Counsel (Risselle Rosenthal Fleisher, General Counsel, on the brief), Baltimore, for appellee.

Argued before WILNER, WEANT and BLOOM, JJ.

BLOOM, Judge.

Maryland Shipbuilding & Drydock Company appeals from a judgment of the Circuit Court for Baltimore City which affirmed an order of the Maryland Commission on Human Relations finding that appellant had denied its employee, Thomas Jackson, a promotion because of his race. Maryland Shipbuilding asserts that the Commission erred by failing to apply to the evidence the correct legal standard, *viz*, that the qualifications of the one who was denied a promotion are equal to or exceed those of the person who was promoted. Appellant also contends that Jackson was not as well qualified for promotion as those individuals who were promoted and that the record fails to support the Commission's finding that the reasons for denying Jackson a promotion proffered by appellant were pretextual. We disagree with all of those contentions and will affirm the judgment.

## Facts

Thomas Jackson had been employed by Maryland Shipbuilding & Drydock Company, Inc. for several years. From 1943 to 1972, Jackson worked in the Rigging Department, first as a rigger's helper and later as a third class specialist. In November 1972, Jackson voluntarily accepted a transfer from the Rigging Department to the Guard Department, even though that reclassification resulted in a pay reduction. Jackson found the transfer attractive because of the potential for overtime as a guard and the greater opportunity for promotion within the Guard Department. Jackson was the first and only black individual ever hired as a guard by Maryland Shipbuilding.

After serving as a guard for several years, Jackson applied for a promotion to lieutenant guard. In December 1979 Jackson contacted Maryland Shipbuilding's Vice President, Gerald P. Walls, concerning such a promotion. Mr. Walls explained to Jackson that it was the function of the Chief Lieutenant to make promotional recommendations; Jackson was instructed, therefore, to direct his inquiries to Chief Lieutenant Emory A. Koch. Jackson contacted Koch and was informed that he would not be recommended for promotion. There is a dispute in the testimony as to whether Koch offered a detailed explanation for his decision not to recommend Jackson, but both of them agree that Koch did state Jackson was not forceful enough to be a lieutenant. Believing that racial prejudice was the true motivation for denying him a promotion, Jackson filed a complaint of discrimination with the Maryland Commission on Human Relations.

The Commission's initial investigation was conducted by Carol Maulsby, an Intergroup Relations Representative. Counsel for Maryland Shipbuilding informed Ms. Maulsby, by letter dated 2 February 1980, that Jackson was denied a promotion because he lacked the qualifications for the position of lieutenant guard. Those qualifications were identified as forcefulness, ability to supervise, good judgment,

ability to deal with the public and shipowners, and sufficient education to write reports. Shortly thereafter, Ms. Maulsby conducted a fact-finding conference. She was provided with an affidavit by Mr. Koch, in which he stated that at the time Jackson approached him concerning a promotion he identified four reasons why he would not recommend Jackson for a promotion:

1. Jackson was not forceful enough;
2. He had exhibited problems in accepting responsibility;
3. He was unable to make sound and timely decisions; and
4. He had difficulty writing accurate reports.

Prior to his inquiry about promotion, Jackson had never been informed that he lacked forcefulness or had difficulty in accepting responsibility and making decisions. Moreover, the hearing examiner reviewed reports prepared by Jackson and concluded that they were "understandable and intelligible."

In May 1980, Ruth Marcus assumed responsibility for the Commission's investigation as it entered the "extended phase." Maryland Shipbuilding informed the Commission in September 1980 that Jackson was unqualified to be a lieutenant guard because the effects of a knee injury he suffered in 1976[1] impaired his ability to complete a guard's patrol round in a timely manner and a lieutenant guard's patrol round would be even more difficult for him. Ms.

---

**1.** Jackson injured his knee in a job-related accident in 1976. He suffered from pain, swelling, periodic weakness in the knee and some trouble with steps. There was testimony to the effect that Jackson was habitually slow in completing his rounds as a guard and that he had attributed that slowness to his knee injury. Jackson, however, never received a warning or reprimand for his alleged failure to complete rounds in a timely fashion. The employer's medical file on Jackson and records of Jackson's Workmen's Compensation Claim were submitted in evidence.

Maryland Shipbuilding alleged below that they first raised the issue of Jackson's knee injury at a discussion just prior to the 26 February 1980 fact-finding conference. Both Jackson and Investigator Maulsby denied that any discussion of that nature took place.

Marcus requested that she and Jackson be permitted to walk through the typical patrol round of a lieutenant guard. Jackson was permitted to do so in November 1980 and performed the required walking and climbing without observable difficulty.

A hearing on Jackson's complaint was conducted in January 1983. The hearing examiner found that Jackson had produced a *prima facie* case of discrimination under the doctrine of *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Maryland Shipbuilding, therefore, was deemed to have the burden to articulate some nondiscriminatory reasons for denying Jackson a promotion. The reasons proffered by Maryland Shipbuilding— inferior qualifications and a disqualifying knee injury— were found by the hearing examiner to be mere pretexts for denying Jackson a promotion. It was the examiner's conclusion that had Jackson been white he would have been promoted; consequently, Maryland Shipbuilding had engaged in unlawful employment discrimination. Md.Ann. Code art. 49B (1983). That conclusion was upheld on appeal first by the Commission's Appeal Board and then by the Circuit Court for Baltimore City.

### *Issues*

Maryland Shipbuilding frames the questions on appeal as follows:

 I. Whether the Commission erred as a matter of law by failing to compare Jackson's qualifications with those of employees promoted to the position of lieutenant guard.

 II. Whether the evidence, in light of the entire record, establishes that Jackson was neither as qualified nor more qualified than employees promoted to the position of lieutenant guard.

 III. Whether the Commission erred by rejecting the company's reasons for not promoting Jackson as pretexts.

We will affirm the judgment of the circuit court, since our answers to the first and third questions are in the negative and we find the second question irrelevant in the context of this appeal.

## I

When an individual, such as Jackson, alleges that he was the victim of disparate treatment in the workplace, he carries with him the burden of proving that the employer intentionally discriminated against him. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). That burden can be met in either of two ways. If the claimant possesses direct or indirect evidence of discrimination he may produce that evidence. *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230, 242 (4th Cir.1982). Alternatively, if he has no such evidence, the claimant must resort to the *prima facie* case method of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its ensuing complexities.

In *McDonnell Douglas,* the Supreme Court created a three-step process for the order and allocation of proof through which claims of employment discrimination could be resolved. In step one, the claimant has the burden of constructing a *prima facie* case of discrimination by the preponderance of the evidence. *McDonnell Douglas,* 411 U.S. at 803, 93 S.Ct. at 1824. That burden can be met by showing:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 802. Upon presentment of a *prima facie* case, a rebuttable presumption of illegal discrimination arises, and the parties move on to the next step, where the onus is upon

the employer to articulate one or more legitimate nondiscriminatory reasons for rejecting the claimant. That burden is not one of persuasion, but one of production. If the employer's explanation creates a genuine issue of fact, the presumption of discrimination "drops from the case." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 254–55 & n. 10, 101 S.Ct. at 1094–95 n. 10 (1980). Then, as the final step, the burden shifts back to the claimant to prove that the reason given for his rejection was pretextual. *McDonnell Douglas*, 411 U.S. at 803, 93 S.Ct. at 1824. That burden thus merges with the claimant's ultimate burden of showing that the employer intentionally discriminated against him. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The claimant may "succeed in this directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*

Maryland Shipbuilding does not dispute the applicability of the general framework for resolving Jackson's claim. It does contend, however, that when a party alleges discrimination in promotion rather than discrimination in hiring, "the courts" replace the fourth element of a *McDonnell Douglas prima facie* case with an absolute requirement that the claimant prove that he was equally or better qualified for the advancement than those employees actually promoted. Applying that principle to this action, Maryland Shipbuilding argues that, by failing to compare explicitly the relative qualifications of Jackson and those individuals promoted to lieutenant guard, the Commission erred as a matter of law in finding employment discrimination. We disagree with appellant's characterization of the law.

Insofar as appellant's argument asserts that Jackson failed to establish a *prima facie* case of discrimination, we reject it out of hand. The meritlessness of such a contention on appeal was, we believe, clearly settled by the Supreme Court in *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75

L.Ed.2d 403 (1983), in which the Court stated: "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant." *Id.* at 715, 103 S.Ct. at 1482. Maryland Shipbuilding argues, nevertheless, that the elements of a *prima facie* case remain relevant throughout the proceedings because "an element of a *prima facie* case is obviously an element of the overall violation." Whatever truth may lie in that statement in some other context, it is directly contrary to the teaching of *Aikens.* Once the employer, in response to a complaint, undertakes to articulate nondiscriminatory reasons for failing to hire or promote the claimant, it is no longer of any concern whether the claimant has made out a *prima facie* case; the parties have gotten past that stage; and the only issue before the court is the ultimate question of fact: did the defendant intentionally discriminate against the plaintiff on the basis of race, color, religion, sex, age, national origin, marital status or a handicap which is unrelated to job performance? In resolving that ultimate issue, the court is not to be burdened by elements and "legal rules which were devised to govern 'the basic allocation of burdens and order of presentation of proof,' *Burdine,* 450 U.S. at 252, [101 S.Ct. at 1093]." *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482. Accordingly, we find no error in the Commission's alleged failure to consider an element of the *prima facie* case after it determined that Jackson had presented a facially sufficient claim of discrimination and the appellant had responded to it.

■ Furthermore, Maryland Shipbuilding's argument that "the courts" in promotion cases modify the *McDonnell Douglas prima facie* case is an overly broad statement of the law. The implication of general acceptance which results from appellant's use of the words "the courts" is belied by an examination of the cases cited by Maryland Shipbuilding in support of its argument. Appellant relies almost exclusively upon decisions rendered within the Fourth Circuit. *E.g., Cuthbertson v. Biggers Brothers,* 702

F.2d 454 (4th Cir.1983); *Lee v. Joseph T. Ryerson & Son, Inc.*, 36 F.E.P. 449 (W.D. N.C.), *aff'd*, 745 F.2d 51 (4th Cir.1984); *Payne v. FMC Corp.*, 609 F.Supp. 1132 (S.D.W. Va.1985). The only cases from without the Fourth Circuit cited by appellant are *Aikens v. Bolger*, No. 77–0303, Slip Op. (D.D.C. Feb. 1, 1984), *aff'd*, 755 F.2d 181 (D.C.Cir.1985), and two decisions of the Maryland Commission issued prior to 1984. Since *Aikens v. Bolger* was decided before the relative qualification approach was rejected in *Mitchell v. Baldrige*, 759 F.2d 80 (D.C.Cir.1985), and since the cited Commission decisions were filed prior to this Court's opinion in *Commission on Human Relations v. Washington County Community Council, Inc.*, 59 Md.App. 451, 476 A.2d 222, *cert. denied*, 301 Md. 354, 483 A.2d 38 (1984), they are no longer persuasive.

It would appear from appellant's brief and our research that the Fourth Circuit stands alone in requiring a claimant to demonstrate relative qualifications as a part of his *prima facie* case of discrimination. Of course, construction of the law is not a game of numbers; therefore, we might be willing to adopt the Fourth Circuit's approach if there were a potent rationale for doing so, but there is not.

The Fourth Circuit has justified its approach on the basis of language found in a footnote in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), where the Supreme Court stated that *McDonnell Douglas* requires the claimant to show that his rejection "did not result from the two most common reasons on which an employer might rely to reject a job application, an absence or relative lack of qualifications or absence of a vacancy in the job sought," *International Brotherhood*, 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44. *Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir. 1986). Although the Court's language might be read as requiring the claimant to demonstrate the equality or superiority of his qualifications as compared with the one selected for promotion, we believe such a reading takes the quote out of its context and ignores the treatment given *McDon-*

*nell Douglas* by the Supreme Court subsequent to the *International Brotherhood* decision.

*International Brotherhood* did not involve the situation presented in *McDonnell Douglas,* the "allocation of proof in a private, non-class action challenging employment discrimination." *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823. *International Brotherhood* concerned the elements of a *prima facie* case in a class action claim for discrimination. The Supreme Court has repeated the elements under *McDonnell Douglas* on a number of occasions since *International Brotherhood* and has never added a requirement that the claimant compare himself to the individual selected over him. *E.g., Furnco Construction Corp. v. Waters,* 438 U.S. 567, 575, 98 S.Ct. 2943, 2948, 57 L.Ed.2d 957 (1978); *Burdine,* 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6; *Cooper v. Federal Reserve Bank,* 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984). In consideration of the above, we construe the *International Brotherhood* footnote "as contemplating qualifications relative to the *entire pool from which applications are welcome,* rather than qualifications relative *only* to those eventually selected." *Mitchell v. Baldrige,* 759 F.2d at 85. (Emphasis in original.)

The crucial issue in a case involving alleged employment discrimination is not whether the claimant was relatively better suited for a position than the one selected, but rather whether the employer denied the claimant a position because of race, sex, national origin or other illegal criterion. *See Burdine,* 450 U.S. at 258–59, 101 S.Ct. at 1096–97. In our opinion, it is more sensible to require that the employer, in his rebuttal to the claimant's *prima facie* case, provide an explanation of the relative qualifications of the claimant and the selectee, than to require the claimant, as a part of his case, to refute hypothetical reasons why the employer may have denied him a promotion. *Cf. Davis v. Weidner,* 596 F.2d 726, 730. In this manner, the alleged victim of discrimination will be given a full and fair opportunity to demonstrate that the qualifications that the employer as-

serts in rebuttal are mere pretext. *See Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95; *Mitchell v. Baldrige,* 759 F.2d at 85.

In the case *sub judice,* Jackson at no time had the burden to demonstrate the superiority of his qualifications for the position over the qualifications of others. Accordingly, we need not determine whether the Commission, at least implicitly, made a comparison of qualifications, because a failure to do so would not constitute an error of law.[2]

### II

In view of the foregoing discussion on the first issue, we deem Maryland Shipbuilding's second argument to be irrelevant. Accordingly, we decline to address it.

### III

■ Maryland Shipbuilding's final contention is that the record does not support the Commission's finding that the reason for denying Jackson a promotion—a lack of qualifications—was pretextual. The standard of review we must employ in considering that argument is set forth in the State Government Article of the Maryland Code. We reverse or modify the decision if it is "unsupported by competent, material and substantial evidence in light of the entire record as submitted." Md. State Gov't Code Ann. § 10–215(g)(3)(v). The principles that guide our application of that substantial evidence test were elucidated by the Court of Appeals in *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 390 A.2d 1119 (1978):

---

2. Were we to apply the rule of law urged upon us by Maryland Shipbuilding, we would still affirm the Commission's order. The Commission found as a matter of fact that the proffered nondiscriminatory reason—Jackson's relative lack of qualifications—was mere pretext. It is our view that the Commission need not engage in pointless comparisons. Upon determining that the proffered nondiscriminatory explanation was unworthy of credence the exercise ended and Jackson was entitled to prevail.

"Substantial evidence," as the test for reviewing factual findings of administrative agencies, has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Snowden v. Mayor & C.C. of Balto.*, 224 Md. 443, 448, 168 A.2d 390 (1961). The scope of review "is limited 'to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached,'" [citing cases within and without the State, treatises, and law journals].

In applying the substantial evidence test, we have emphasized that a "court should [not] substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken." *Bernstein v. Real Estate Comm.*, 221 Md. 221, 230, 156 A.2d 657 (1959), *appeal dismissed*, 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960). We must also review the agency's decision in the light most favorable to the agency, since "decisions of administrative agencies are *prima facie* correct," *Hoyt v. Police Comm'r*, 279 Md. 74, 88–89, 367 A.2d 924 (1977), and "carry with them the presumption of validity," *Dickinson-Tidewater, Inc. v. Supervisor*, 273 Md. [245,] 246 [, 329 A.2d 18 (1974)]; *Heaps v. Cobb*, 185 Md. 372, 378, 45 A.2d 73 (1945). Furthermore, not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences. *Labor Board v. Nevada Consolidated Copper Corp.*, 316 U.S. 105, 106–107, 62 S.Ct. 960 [961], 86 L.Ed. 1305 (1942); *Board v. Levitt & Sons*, 235 Md. 151, 159–160, 200 A.2d 670 (1964); *Snowden v. Mayor & C.C. of Balto.*, *supra*, 224 Md. at 448 [168 A.2d 390].

283 Md. at 512–13, 390 A.2d 119. With these principles in mind we shall consider appellant's contention.

Maryland Shipbuilding identified five qualifications for the position of lieutenant guard:

1. forcefulness,
2. ability to supervise,

3. good judgment,
4. ability to deal with public and shipowners, and
5. sufficient education to write reports.

Regarding these criteria, the company alleged that Jackson was not forceful, that he had difficulty accepting responsibility, that he was unable to make sound and timely decisions, and that he had difficulty writing reports. Appellant also maintained that it had considered Jackson unqualified because he had a knee injury that would impair his ability to complete a lieutenant's rounds.

It is interesting to note that of the factors listed by Maryland Shipbuilding, only two are susceptible to any manner of objective measurement, and as to them the record clearly supports a finding that they were pretextual. The hearing examiner reviewed a sampling of reports prepared by Jackson and concluded they were "understandable and intelligible." We find no basis for disagreement with that conclusion. We likewise find in the record substantial evidence to support the Commission's finding that Jackson's knee injury was not actually a factor in appellant's promotion decision. That particular problem was not mentioned in the 26 February affidavit of Chief Lieutenant Koch, which purportedly listed the reasons why Jackson was not recommended for promotion. The knee injury has the appearance of a *post hoc* rationalization in that it was not raised until September 1980.[3] Moreover, when put to the test by a Commission Investigator, Jackson performed a lieutenant's rounds without observable difficulty. Accord-

---

3. We are unpersuaded by appellant's argument that the record shows that Jackson's knee injury was first raised in its position paper of 25 February 1980. That document merely described the structure of the Guard Department and the general duties of both guards and lieutenants and concluded with the flat statement that Jackson was unqualified to be a lieutenant.

 We also reject Maryland Shipbuilding's argument that the testimony of Commission Investigator Maulsby fails to contradict their contention that Jackson's knee was discussed at the 26 February 1980 fact-finding conference. A fair reading of her testimony reveals that she denied any such discussion took place.

ingly, there was substantial evidence to support the conclusion that Jackson's writing ability and knee injury were not legitimate factors in Maryland Shipbuilding's decision to deny Jackson a promotion, *i.e.*, that they were pretexts.

With respect to the remaining three criteria, Maryland Shipbuilding argues that the record is replete with evidence indicating that Jackson lacked forcefulness and was slow, indecisive and otherwise unfit to be a lieutenant. The Commission considered appellant's evidence, yet rejected the notion that the evidence demonstrated a lack of qualifications; we cannot say that it was unreasonable in so doing.

The evidence Maryland Shipbuilding presented in support of its evaluation of Jackson amounted to no more than anecdotal observations concerning incidents in which Jackson allegedly did not perform properly as a guard. The Commission recognized that Jackson made some mistakes on his job, but it found that Jackson had never been told, prior to his inquiring about a promotion, that he lacked forcefulness, or had trouble accepting responsibility, or exhibited difficulty making sound employment decisions.[4] Jackson's personnel file contains no warnings, reprimands, or other documents indicating dissatisfaction with Jackson's performance as a guard. The Commission apparently concluded that if these incidents had been of any significance Maryland Shipbuilding would have made a point of documenting the problems or, at least, discussing them with Jackson. We cannot say that no reasonable person would reach that conclusion.

 Maryland Shipbuilding contends that there was no substantial evidence to support the Commission's determination that appellant's subjective evaluation of Jackson was a pretext for denying him a promotion. The short answer to that contention is that the Commission's finding is based

---

**4.** Maryland Shipbuilding's employees testified that they had on numerous occasions spoken with Jackson about various deficiencies in his job performance. It was within the province of the hearing examiner, as the trier of fact, to disbelieve their testimony.

primarily upon its assessment of the credibility of the witnesses. In that regard we note that while subjective criteria are not *per se* illegal, they are highly suspect. *Crawford v. Western Elec. Co.*, 614 F.2d 1300, 1315–16 (5th Cir.1980). They are particularly suspect when the only objective criteria proffered by the employer prove to be pretextual. Inasmuch as the Commission chose to believe Jackson's testimony when it conflicted with that presented by Maryland Shipbuilding, we must accept the Commission's finding.

Upon finding that the nondiscriminatory reasons for denying Jackson a promotion that were articulated by Maryland Shipbuilding were pretextual, the Commission could only conclude that Jackson was denied a promotion because of his race. Accordingly we affirm the judgment of the circuit court, which affirmed the Commission's order.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.